1. GERAGOS & GERAGOS APC

MARK J. GERAGOS (SBN 108325)
BEN J. MEISELAS (SBN 277412)
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 625-3900
Facsimile: (213) 232-3255
geragos@geragos.com

**LEVI & KORSINSKY LLP**
LORI G. FELDMAN (*pro hac vice* to be filed)
lfeldman@zlk.com
ANDREA CLISURA (*pro hac vice* to be filed)
aclisura@zlk.com
COURTNEY E. MACCARONE (*pro hac vice* to be filed)
cmaccarone@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Plaintiffs on Behalf of Themselves
And All Others Similarly Situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SHARON MANIER, DOROTHY RILES, and LAKEYTRA NERO, Individually and on Behalf of All Others Similarly Situated,

            Plaintiffs,

    v.

L'ORÉAL USA, INC. and
SOFT SHEEN-CARSON, LLC,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 16-cv-6886

**CLASS ACTION**

**COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF**

DEMAND FOR JURY TRIAL

        Plaintiffs Sharon Manier, Dorothy Riles, and Lakeytra Nero ("Plaintiffs"), by

and through their attorneys, make the following allegations pursuant to the

investigation of their counsel and based upon information and belief, except as to

the allegations specifically pertaining to themselves, which are based on their personal knowledge:

## NATURE OF THE ACTION

1.     This is a class action against L'Oréal USA, Inc. and Soft Sheen-Carson, LLC (together, "L'Oréal" or "Defendants") based on their formulation, manufacture, marketing, and sale of a defective hair relaxer kit—the SoftSheen-Carson Optimum Amla Legend No-Mix, No-Lye Relaxer (the "Amla Relaxer" or the "Product").

2.     Soft Sheen Products, Inc. was the nation's largest African-American-owned beauty products company until its acquisition by L'Oréal in 1998.  Today, using the SoftSheen-Carson brand, L'Oréal claims to continue the tradition of providing "scientifically-advanced beauty tools" to African-American women with products that are "safe, reliable and guaranteed to provide great results."

3.     In 2013, operating as SoftSheen Carson and SoftSheen Carson Laboratories, L'Oréal introduced the Amla Relaxer under the SoftSheen-Carson Optimum Salon Haircare brand as a safe, "NO-LYE," at-home hair relaxer treatment for all hair types.  It claimed the Product was a nourishing, "Rejuvenating Ritual," which would provide "fuller, silkier hair" and "respect of hair fiber integrity," most notably through its purportedly key ingredient Amla Oil—a legendary, antioxidant rich oil derived from the Indian Amla superfruit.

4.     These claims were far from the reality for thousands of women who purchased the Amla Relaxer.  A host of consumer complaints on the internet, including L'Oréal's own webpages, report that the Amla Relaxer results in disturbing and distressing injuries including hair loss and breakage, as well scalp irritation, blisters, and burns.

2

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

5.     In fact, the Product contains hardly any Amla Oil (or Phyllanthus Emblica (Indian Gooseberry) Fruit Extract) at all.  The true ingredients in the Amla Relaxer are a dangerous mix of irritants and potentially toxic substances.

6.     L'Oréal has known for years that its Product is dangerous and defective and yet it has taken no action to warn the public, recall the Product, or compensate the vast majority of its purchasers.  Instead, it continues to falsely and fraudulently promote the Product's claimed safe and nourishing qualities, even while quietly responding to certain online complaints with requests that the individual call customer service with a reference number for help.

7.     Plaintiffs are among the many consumers who relied on Defendants' promises to provide a rejuvenating, "No-Lye" relaxer that would strengthen and nourish their hair.  They and other women trusted Defendants to provide a safe and effective product.

8.     Instead, when Plaintiff Riles used the Product as intended and instructed by Defendants, it left her with bald spots, as well as burns and then scabs on her scalp.  After using the Amla Relaxer, Plaintiff wore a wig for the first time in her life to cover her injuries.  To date, Plaintiff continues to struggle with thin, unhealthy, and damaged hair as a result of her use of the Product.

9.     The following images show Plaintiff's hair shortly before and then after her use of the Amla Relaxer.

 

3

OR DAM

1
2
3

    10.    Some of Plaintiff's hair loss is visible in a close-up of the latter photo.



    11.    The actual effects of the Product present a sad contrast to L'Oréal's claimed expertise "[a]s a leader of the multiethnic hair care industry" and "attention to [the] specific needs of their consumers' many types and textures of hair," as well as to its brand imagery, featuring celebrities such as Beyoncé and Kelli Rowland.




4

12.    Plaintiffs seek damages and equitable relief in this action individually and on a class-wide basis for breach of express and implied warranties, fraud, negligence, unjust enrichment, and for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq.*

## **PARTIES**

13.    Plaintiff Sharon Manier is a resident of the State of California, residing in Riverside County, California.  After viewing statements on Product packaging for the Amla Relaxer regarding its purported safe and nourishing qualities, Plaintiff purchased the Amla Relaxer from a Walmart in Moreno Valley, California in or about July 2016.  As a result of Defendants' representations and omissions, Plaintiff purchased the Product because she reasonably believed that the Product was safe and effective, and would be gentle on her hair and skin.  She relied on Defendants' representations that the Product would make her hair silkier and softer.  Plaintiff Manier would not have purchased the Amla Relaxer had she known of its propensity to cause hair loss, burning, and blisters.  Plaintiff followed the Product instructions, as directed by Defendants, including, but not limited to, performing a strand test and applying Defendants' so-called "scalp protector."   Upon applying the Product, Plaintiff Manier immediately experienced scalp irritation.  She quickly washed out the Product and her hair began to fall out.  Plaintiff is currently wearing partial hair pieces to cover up the areas of hair loss and is currently purchasing costly hair vitamins to help her hair regrow.

14.    Plaintiff Dorothy Riles is a resident of the State of Illinois, residing in Cook County, Illinois.  After viewing statements on Product packaging for the Amla

Relaxer regarding its purported safe and nourishing qualities, Plaintiff purchased Amla Relaxer from a Walgreens in Chicago, Illinois in or about May 2015. As a result of Defendants' representations and omissions, Plaintiff purchased the Product because she reasonably believed that the Product was safe and effective, and would be gentler on her hair and skin as compared to a lye-based relaxer. Plaintiff would not have purchased the Amla Relaxer had she known of its propensity to cause hair loss, burning, and blisters. Plaintiff had previously used relaxer products, which had not caused hair loss or injury. Plaintiff followed the Product instructions, as directed by Defendants, including, but not limited to, performing a strand test and applying Defendants' so-called "scalp protector." After using the product, Plaintiff experienced significant hair loss. As a result of her use of the Product, she also experienced scalp burning and irritation and was left with bald patches on her head, as well as scabs on her scalp. Plaintiff had not worn a wig before, and was forced to wear a wig due to the significant hair loss she experienced as a result of using the Product. Although Plaintiff's burns have now healed, her hair remains thin and she still occasionally wears a wig because of the damage caused by the Product.

15. Plaintiff Lakeytra Nero is a resident of the State of California, residing in Los Angeles, California. Plaintiff purchased the Product two times, using it sparingly each time. The damage to her hair was cumulative. After viewing statements on Product packaging for Amla Relaxer regarding its purported safe and nourishing qualities, Plaintiff purchased Amla Relaxer from a beauty supply store in Los Angeles and from a Target in Englewood, California, most recently in early 2016. As a result of Defendants' representations and omissions, Plaintiff purchased the Product because she reasonably believed that the Product was safe and effective, and would be gentle on her hair and skin. Plaintiff would not have purchased the Amla Relaxer had she known of its propensity to cause hair loss, burning, and blisters. Plaintiff followed the Product instructions, as directed by Defendants,

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

including, but not limited to, performing a strand test and applying Defendants' so-called "scalp protector."  After using the product, Plaintiff experienced hair loss and scalp irritation.  Her hair is still very thin and damaged from her use of the Product.

16.    Defendant, L'Oréal USA, Inc., is a Delaware corporation with headquarters at 575 Fifth Avenue, New York, New York 10017.  It is a subsidiary of the French cosmetics giant L'Oréal S.A., the world's largest cosmetics company. L'Oréal developed, marketed, distributed, and sold the Amla Relaxer through its Consumer Products Division.  It has deceptively marketed the Product under its brands SoftSheen-Carson, SoftSheen-Carson Laboratories, and Optimum Salon Haircare as part of its Amla Legend line of products.  L'Oréal has distributed and sold the Product through retail channels nationwide and directly to thousands of consumers throughout the United States.

17.    Defendant Soft Sheen-Carson, LLC is a New York limited liability company.  At all times relevant to this matter, Soft Sheen-Carson, LLC was a citizen of the state of New York with a principal place of business in New York, New York. Soft Sheen-Carson, LLC marketed, distributed, and sold the Amla Relaxer to consumers in this judicial district and throughout the United States.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

19.    This Court has personal jurisdiction over Defendants.  Many of the acts and omissions giving rise to this action occurred in California, including purchases of the Product by Plaintiff Manier and other putative Class members.  Defendants have sufficient minimum contacts in California and intentionally avail themselves of

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  markets within California through the promotion, sale, marketing, and distribution

2  of its products and services in this State.

3      20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a

4  substantial part of the events or omissions giving rise to Plaintiffs' claims occurred

5  in this District as Defendants do business throughout this District, including selling

6  and distributing the Product at issue in this District, and Plaintiff Manier purchased

7  the Product in this District.

8                              **FACTUAL ALLEGATIONS**

9  **The SoftSheen-Carson Brand**

10     21.    In 1998, L'Oréal purchased Soft Sheen Products, Inc., which had

11 grown from a small family business founded in 1964 in Chicago to be the nation's

12 largest African-American-owned beauty products company.  In 1999, L'Oréal

13 acquired Carson Products, another leader in beauty products for black consumers,

14 and in 2000 it merged the two companies to form SoftSheen-Carson.  The then-

15 chairman and CEO of L'Oréal declared the acquisitions a strategic step in enhancing

16 the company's position in ethnic beauty markets both in the United States and

17 globally.

18     22.    Today, using the SoftSheen-Carson brand, L'Oréal claims to continue a

19 110 year tradition of providing "scientifically-advanced beauty tools" to African-

20 American women with "innovative products…specially designed for their needs"

21 that are "safe, reliable and guaranteed to provide great results."  *See*

22 http://www.softsheen-carson.com/about-us.

23     23.    In particular, L'Oréal stresses the "ingredient science" embraced by its

24 so-called SoftSheen Carson Laboratories.  "By relying upon the depth of our

25 scientific know-how, we are continually advancing our products in order to surpass

26 the industry standards, making them the safest and most effective beauty products

27 for our consumers."  *See id.*

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

24. L'Oréal has sought deeper penetration into the market share of minority communities, claiming a desire to "help[] men, women, and children of color to define and express beauty, on their own terms," while employing celebrities including Beyoncé and Kelli Rowland as brand promoters.

25. However, L'Oréal's deceptive practices have belied its claims that "at Softsheen-Carson, we mix our heart, our soul, and our science into formulas that come through for the community that gave birth to us." Instead of coming through for that community, it has knowingly sold its customers a dangerous, defective product comprised of a mix of harmful chemicals.

**The Amla Relaxer**

26. In 2013, L'Oréal launched the "Amla Legend" line of hair products—a product range claimed to be "enriched with purified Amla extract that rejuvenates hair and undoes 2 years of damage in 2 weeks."



27. L'Oréal promotes its Amla Legend line as a range of rejuvenating and nourishing products infused with Amla oil, a luxurious hair oil "derived from the Indian Amla superfruit known as the Gooseberry, a powerful antioxidant rich in vitamins, essential fatty acids and minerals."

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12



13   28.   L'Oréal prominently features gold droplets of Amla Oil on all its Amla

14   Legend products, touting the ingredient's "natural rejuvenating properties of intense

15   nourishment, conditioning and strength."

16   29.   L'Oréal partnered with celebrity supermodel and Real Housewife of

17   Atlanta, Cynthia Bailey, actress Tracy Ellis Ross, and celebrity hair stylist Johnny

18   Wright, stylist to First Lady Michelle Obama, to launch and promote the Amla

19   Legend collection.

20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF



30.     Issuing a press release under the SoftSheen-Carson Laboratories moniker, L'Oréal announced that SoftSheen-Carson's "*NEW!* Optimum Salon Haircare AMLA Legend Rejuvenating Ritual is now available in stores nationwide" and stressed the abilities of the Amla Oil ingredient to "norish[] and revitalize[] the scalp and hair fiber," "[r]everse[] damage from day one," and protect "every hair type and texture" from "dryness, breakage, and dullness."

31.     These promises and substantially similar claims appear directly on packaging for the Amla Relaxer hair relaxer kit, which Defendants formulated, manufactured, marketed, distributed, and sold nationwide both directly to consumers and through major retail locations, including, but not limited to, Walmart, Sally Beauty Supply, CVS, and Walgreens, as well as through online retailers such as Amazon.com and Defendants' own website, http://www.softsheen-carson.com/.[1]

32.     The Amla Relaxer packaging prominently displays the gold droplet of Amla Oil and claims the Product will "reveal visibly fuller, silkier hair":

5

1

2

3

4

5      33.    The Product is sold as a "rejuvenating" "5-step ritual"—including a so-

6  called "scalp protector pre-treatment," relaxer cream, shampoo, conditioner, and oil

7  moisturizer, each featuring the "LEGENDARY…AMLA OIL!," as depicted on the

8  following Product package panel:

9

10

11

12

13

14  

15

16

17

18

19

20

21

22

23     34.    L'Oréal employs numerous marketing claims to reinforce the Product's

24  purported safe, nourishing, and gentle qualities.   Specifically, packaging for the

25  Amla Relaxer contains the following representations regarding the Product's alleged

26  qualities:

27            • "NO-LYE";

28
CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- "Refills to reveal visibly fuller, silkier hair";
- "Optimum Salon Haircare unveils its 1st Rejuvenating Ritual for your hair";
- "Infused with a legendary Indian beauty secret: AMLA oil";
- "Amla is derived from the Amla Superfruit, and is known as a powerful anti-oxidant, rich in vitamins and minerals, and renowned for its natural rejuvenating properties of intense nourishment and conditioning";
- "Anti-Dryness";
- "Anti-Breakage";
- "Intense Conditioning";
- "Infuses Hydration and Conditioning";
- "Protects Scalp & Skin";
- "Ensures an easier relaxing process for unified results and superior respect of hair fiber integrity."

35.    The "NO-LYE" claim in particular targets consumers who are seeking a gentler alternative to lye-based relaxers, which are known for their potential to cause irritation and to be harsh on hair and skin.

36.    Similarly, the "Our Ingredients" webpage of the softsheen-carson.com website and "All Ingredients" list presented there address only ingredients with "nourish[ing]," "conditioning," and "natural rejuvenating properties":

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**ALL INGREDIENTS**

| | | |
|---|---|---|
| AVOCADO OIL | AMLA OIL | SUNFLOWER SEED OIL |
| OLIVE OIL / OLIVE FRUIT OIL | JOJOBA SEED OIL | ARGAN OIL |

37.     Unfortunately, such ingredients comprise only the smallest percentages of the various components of the Amla Relaxer.  In reality, there is barely any "LEGENDARY…AMLA OIL" in the Product.  Instead, the Product is a mix of harsh, caustic, and potentially toxic chemicals.

38.     The Amla Relaxer is marketed as a "NO-LYE" hair relaxer.  However, the Product is made with ingredients that have the potential to be every bit as caustic, dangerous, and damaging as lye.

39.     Hydroxide relaxers are often made with either sodium hydroxide, potassium hydroxide, lithium hydroxide, or guanidine hydroxide.  "Lye" is a generic term most commonly used for sodium hydroxide.  Lye relaxers are frequently used by professionals, but are they known for their potential to cause skin irritation.[2] Thus, hydroxide relaxers made without sodium hydroxide are frequently marketed as "no-lye" to appeal to consumers.

40.     However, as Defendants are well-aware, the Product contains a mix of ingredients that are as dangerous and caustic as lye.  For example, the ingredient lithium hydroxide can cause damaging effects including severe irritation, burns, and blisters.  Since the Product is applied to the hair, there is no avoiding potentially harmful skin contact.

41.     One of the reasons a consumer may seek out a no-lye relaxer is because they are looking for a product that is milder on the scalp and gentler on hair.  By

---

[2] Hydroxide relaxers generally have a high pH, and thus a strong potential to cause chemical burns.  A pH level measures the acidity or alkalinity of a solution on a scale of 0 to 14.  Alkalis are bases with a pH of more than 7.  The stronger the alkali, the more corrosive or caustic.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

representing on the front of the Product packaging, in capitalized and bold letters, that Amla Relaxer has "NO-LYE," along with representations regarding rejuvenating, nourishing, conditioning qualities of the Product, Defendants led reasonable consumers to believe that Amla Relaxer is a gentler alternative to relaxers containing lye.

42.    National retailers utilize similar promotional materials on their websites, including the images of the Product packaging.  For example, Walmart's website states that the Product is "[a]n easy no-mix, no-lye cream relaxer kit that ensures an easier relaxing process for unified results and superior respect for hair fiber integrity."[3]  The Walmart website also contains the following representation:

> Optimum Salon Haircare unveils its first **Rejuvenating Ritual** for your hair, Optimum Amla Legend No-Mix, No-Lye Relaxer. It's infused with a legendary Indian beauty secret: amla oil. Amla is derived from the amla superfruit, and is known as a powerful anti-oxidant, rich in vitamins and minerals, and **renowned for its natural rejuvenating properties of intense nourishment and conditioning**. Experience the legendary power of amla oil![4]

43.    Similarly, the CVS website contains the following representations:

> Infuses **hydration and conditioning**, Intense detangling, No Mix, No-Lye Relaxer System For All Hair Types. Amla Legend Regular Relaxer **ensures an easier relaxing process for untied results and superior respect of hair fiber & fiber integrity**. Optimum Salon Haircare unveils its 1st Rejuvenating Ritual for your hair, infused with a legendary Indian beauty secret: Amla Oil. Amla is derived from the Amla Superfruit, and is known as a powerful anti-oxidant, rich in vitamins and minerals, and

---

[3] *See* https://www.walmart.com/ip/Optimum-Amla-Legend-No-Mix-No-Lye-Relaxer/24548828 (last accessed August 25, 2016).

[4] *See id.*

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**renowned for its natural rejuvenating properties of intense
nourishment and conditioning.**[5]

44.     These representations are false, misleading, and deceptive.  In reality,
Amla Relaxer can and does cause devastating injuries, such as hair loss and skin
irritation, including burning and blisters, when used in accordance with the
instructions provided by Defendants.

45.     Defendants know the dangers posed by the Product and its ingredients,
as evidenced by their own ingredients list for the Amla Relaxer cream.

PRODUCT DETAILS    **INGREDIENTS**

AQUA / WATER / EAU, PARAFFINUM LIQUIDUM / MINERAL OIL / HUILE
MINERALE, PETROLATUM, CETEARYL ALCOHOL, POLYSORBATE 60, BUTYLENE
GLYCOL, HEXYLENE GLYCOL, LITHIUM HYDROXIDE, PEG-75 LANOLIN, OLETH-10,
COCAMIDOPROPYL BETAINE, PARFUM / FRAGRANCE, COCOS NUCIFERA
OIL/COCONUT OIL, PHYLLANTHUS EMBLICA FRUIT EXTRACT

46.     Defendants' "NO-LYE" representation is rendered misleading by the
highly caustic nature of the Product's actual components.  Indeed, the ingredient
lithium hydroxide can cause damaging effects including severe skin irritation, burns,
and blisters.

47.     The Product ingredients also include:

    a. hexylene glycol, a hazardous substance used in chemical
manufacturing, which can irritate the skin, eyes, and respiratory tract;

    b. butylene glycol, a chemical that can penetrate the skin causing
irritation, dermatitis, and hives;

---

[5] *See* http://www.cvs.com/shop/beauty/hair-care/treatments/softsheen-carson-
optimum-amla-legend-rejuvenating-ritual-no-mix-no-lye-relaxer-prodid-
915172?skuId=915172 (last accessed August 25, 2016).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

    c.  cocamidopropyl betaine, a synthetic surfactant associated with irritation and allergic contact dermatitis; and

    d.  unspecified parfum / fragrance.

48.    Only last (and least) does the legendary Amla Oil ingredient—Phyllanthus Emblica (Gooseberry) Fruit Extract—appear.

49.    The dangerous and defective nature of the Product is apparent from its ingredients list.  It is undeniable from the slew of consumer complaints evidenced on the Internet.

50.    The Internet is replete with consumer complaints that describe the Product causing severe adverse reactions such as significant hair loss, burns, and blisters.  Below is a sample of consumer complaints from Amazon.com, which show a disturbing trend:

- I have never experienced burns like the burns from this product. [By] the time I walked up the stairs to the bathroom it was unbearable. I pray my skin returns to normal and they should be sued.[6]
- ***I WANT TO SUE THIS COMPANY. ****I AM 42 YEARS OLD AND I HAVE BEEN RELAXING MY OWN HAIR SINCE I WAS 17 YEARS OLD, AND HAVE NEVER BEEN THIS TRAUMATIZED. YESTERDAY 8-21-13 WENT AND PURCHASED THIS AMLA RELAXER. (NORMALLY I USE MILD OR REGULAR). BUT THIS BOX DID NOT SAY IF IT WAS MILD, REGULAR OR SUPER STRENGHT. I ASKED THE SALES CLERK AND SHE SAID IT WAS FOR ALL HAIR TYPES. AROUND 8:25PM AFTER APPLYING THE SCLAP TREATMENT BASE, I STARTED APPLYING THE RELAXER AND IMMEDIATELY MY SCALP WAS ON FIRE. 5-10 MINUTES LATER ALL THE HAIR AT THE FRONT OF MY HEAD FELL OUT AS I RINSED THIS CRAP OFF MY HAIR. [I] AM SO TRAUMATIZED BY THIS EXPERIENCE. NOW I

---

[6] *See* https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed August 25, 2016).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

AM COMPLETELY BALD ON THE FRONT PORTION OF MY HEAD (COMPLETELY BALD FROM THE CROWN TO MY FOREHEAD). AND TODAY 8-22-13 MY SCALP IS STILL HURTING AND BURNING. I ONLY HAVE HAIR IN THE BACK OF MY HEAD. I AM SO DEPRESSED AND TRAUMATIZED FROM THIS EXPERIENCE THIS COMPANY NEED TO STOP SELLING THIS PRODUCT. IT IS MISLABELED.[7]

- Don't use it! My 26 year old daughter is upstairs crying her eyes out because her hair is gone. And I (her mother) relaxed it for her. We followed directions she has been relaxing for years. We did not leave it on too long. She now has no hair on the sides or back of her head. Even with the scalp protector and vaseline around her edges No Hair and her scalp is burned badly I did notice a lot of hair loss during rinsing but never imagined this. Stay away from this product I didn't know how to do no stars so I did one but for us it's a big fat 0 stars.[8]

- DO NOT USE THIS PRODUCT!!!! I BOUGHT THIS RELAXER FROM A SALLY BEAUTY SUPPLY IN TEXAS. MY HAIR IS EXTREMEY DAMAGED. I HAVE A BALD SPOT IN THE CROWN OF MY HEAD, MY HAIR HAS COME OUT AROUND MY EDGES AND NAPE AREA AND THROUGHOUT MY HAIR I HAVE SHORT DAMAGED SPOTS. I WEAR MY HAIR SHORT AND NOW I HAVE ALMOST NO HAIR. I NOW HAVE TO WEAR [A] WIG. I AM DEVASTATED!!!!

  SOFT SHEEN NEEDS TO DO RIGHT BY US. ALSO, LADIES, WHAT ARE WE GOING TO DO ABOUT IT? I HAVE CONTACTED THE COMPANY TO SEE WHAT THEY WILL DO FIRST AND THEN I AM CONSIDERING A PETITION AND CONSUMER COMPLAINT.

  I AM A FORMER COSMETOLOGIST, SO I KNOW HOW TO APPLY A RELAXER. THIS IS THE FIRST TIME I HAVE EXPERIENCED THIS HORRENDOUS![9]

---

[7] *See id.*

[8] *See id.*

[9] *See* https://www.amazon.com/Softsheen-Carson-Optimum-Legend-
(continued…)

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- DO NOT USE THIS RELAXER IF YOU WANT TO KEEP YOUR HAIR!!! OMG!! WHY DID I NOT READ THE REVIEWS BEFORE APPLYING THIS PRODUCT TO MY HAIR!!!! I PURCHASED THIS PRODUCT ON THURSDAY, FEB 4, 2016 BECAUSE I NEEDED TO RE-TOUCH MY ROOTS ONLY! I WANTED TO TRY A DIFFERENT RELAXER AND USED OTHER ALMA LEGEND PRODUCTS SO THOUGHT WHAT COULD GO WRONG!! WHY JESUS, DID'NT I JUST STICK TO MY ORGANICS OLIVE OIL RELAXER!! NEEDLESS TO SAY I STARTED AT THE BACK OF MY HEAD AND WORKED MY WAY TO THE MIDDLE OF MY HEAD! IT STARTED TO BURN, BUT NOTHING THAT I COULD NOT HANDLE SO I THOUGHT!! THEN THE BURNING STARTING TO GET WORSE!! SO IMMEDIATELY DECIDED LET ME JUST DO MY FRONT EDGES AND WASH OUT. I SERIOUSLY HAD THE PRODUCT ON NO LONGER THA[N] 20 MINUTES. I JUMPED IN THE SHOWER TO START WASHING THE RELAXER OUT USING COOL WATER, I GRABBED THE NEUTRALIZING SHAMPOO TO STOP THE PROCESSING AND TO POSSIBLY COOL DOWN THE BURNING, AND WHEN I SAY GLOBS OF HAIR STARTING TO SLIDE OUT OF MY HAIR. I MEAN WHOLE GLOBS OF HAIR!! NOT NORMAL 2-3 STRANDS. BUT A WHOLE SECTION OF THE MIDDLE OF MY HEAD IS BASICALLY GONE!! I STARTED SCREAMING AND CRYING AT THE SAME TIME AND GRAB EVERY DEEP CONDITIONER I OWNED!! BUT NOTHING WORKED!! IT WAS TOO LATE!! NOW I'M LITERALLY LEFT WITH THIN FRIED HAIR WITH SPOTS OF BROKEN OFF PIECES!! BIG CHANGE FROM MY THICK WAVY ROOTS HAIR THAT I WORK HARD TO MAINTAIN!! I'M SO UPSET THAT I'M THINKING OF SUING THIS COMPANY!! THEY NEED TO IMMEDIATELY TAKE THIS PRODUCT OFF THE MARKET!! IT'S THE WORST PRODUCT I HAVE EVER USED!!

---

(…continued)

Relaxer/product-reviews/B00B1KM1XM/ref=cm_cr_dp_see_all_btm?ie=UTF8&showViewpoints=1&sortBy=recent (last accessed August 25, 2016).

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

NOW I WILL HAVE TO FIGURE OUT IF I WANT [A] SHORT PIXIE CUT OR WAIT 2 WEEKS TO GET BRAIDS!! OR WAIT UNTIL MY SCALP STOPS BURNING!! UGH!! I HOPE THIS SAVES SOMEONE OUT THERE!! THINK I MAY STAY AWAY FROM RELAXERS FOR GOOD!![10]

- I have long thick healthy bra strap length hair and usually use Soft & Beautiful Botanical for my touch-ups every 3-4 months. I decided to purchase this perm from Walmart thinking that because it's expensive, maybe it would be better than the Soft & Beautiful that I've used for years. Also because of it's "no mix" feature. Well...2 minutes after applying this product to the lower half of my head, trying carefully to avoid the scalp, my scalp was on fire. Now keep in mind that I do not have sensitive scalp and have never burned from any other relaxer. I honestly thought I was having an allergic reaction to the product. I quickly rinsed the crap off with their neutralizing shampoo. Even after rinsing 3-4 times, my scalp was still burning. I decided to use my own shampoo and added coconut, olive oil and any conditioner I could get my hands on to stop the stinging and breakage. Rinsed again another 4 times. I was in pain even after drying my hair. Now I have scabs all over my scalp. Since then, I've had to add olive oil to my scalp every day to soften the scabs and so that my [h]air does not continue to fall out. This is by far the wors[t] experience I've ever had with a relaxer. There really should be a class-action lawsuit against this product.[11]

- All my hair came out don't buy this product[12]

- I purchased this perm because it was new. My hair fell out My head was burning so BADD after 3 minutes. I have pictures where my hair was just falling out in chunks. PLEASE DONT USE THIS PERM!!!!!!!! THIS PERM IS HORRIBLE!!!!! IM BALD ALL IN THE CENTER OF MY HEAD AND MY SCALP LOOKS

---

[10] *See id.*

[11] *See* https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/product-reviews/B00B1KM1XM/ref=cm_cr_arp_d_paging_btm_2?ie=UTF8&showViewpoints=1&sortBy=recent&pageNumber=2 (last accessed August 25, 2016).

[12] *See id.*

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

WHITE LIKE ITS BURNT!!!!!!! MY HAIR IS STILL
SHEDDING BADD AFTER USING THIS PERM THREE
WEEKS AGO!!!!! I HAD THE MOST BEAUTIFUL
HAIR!!!!!!!!!!![13]

- Attention ladies.. DO NOT USE THIS PRODUCT!!!!!!! My hair
  is falling out in clumps and I have no hair in the lower back of my
  head at all. This company has to be sued and this product needs to
  be taken off the market. No one should have to go through this at
  all. We need a class action lawsuit to go in effect immediately. I
  wish I read these reviews before I purchased this product..Alma
  Legends relaxer!!!!! Save yourself while you still have time. If you
  want to keep your hair and your sanity you will not use this
  product. I have been natural for at least two years and went to the
  store to purchase products for a blowout but the products weren't in
  stock so I decided to relax my hair, worst decision in my life!!! I
  will be obtaining a lawyer because this is just wrong. So once
  again...do not buy this product..please do not fall for their
  propaganda! I cannot stress this fact enough!! The worst![14]

51.    These consumers, as well as Plaintiffs and other Class members,
sustained damages as a direct and proximate result of Defendants' fraud, negligence,
wrongful conduct and omissions in connection with the research, formulation,
manufacture, testing, marketing, and sale of the Product.

52.    Despite having notice of these consumer complaints, Defendants have
continued to sell the Product and have failed to recall the Product or provide
adequate warning or instruction on the Product packaging or in other marketing
materials.  Moreover, Defendants have failed to take proper action to mitigate the
adverse effects caused by its Product.

---

[13] *See* https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/product-reviews/B00B1KM1XM/ref=cm_cr_getr_d_paging_btm_3?ie=UTF8&showViewpoints=1&sortBy=recent&pageNumber=3 (last accessed August 25, 2016).

[14] *See id.*

53.    Defendants made the above-described actionable statements, and engaged in the above-described omissions and concealments with knowledge that the representations were false, deceptive and/or misleading, and with the intent that consumers rely upon such representations, omissions and concealments. Alternatively, Defendants were reckless in not knowing that these representations and material omissions were false and/or misleading at the time they were made.

54.    Plaintiffs and other Class members relied on Defendants' misrepresentations and omissions regarding the benefits of the Product. Plaintiffs and Class members have been damaged by Defendants' deceptive and unfair conduct and wrongful actions and inaction in that they purchased the Product which they would not have otherwise purchased had Defendants not misrepresented the benefits of the Product or warned them of the potential harms caused by the Product.

## CLASS DEFINITIONS AND ALLEGATIONS

55.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons in the United States who, within the relevant statute of limitations period, purchased the Product (the "Class").

56.    Plaintiffs Manier and Nero also seek to represent a subclass defined as all members of the Class who purchased the Product in California (the "California Subclass").

57.    Plaintiff Riles also seeks to represent a subclass defined as all members of the Class who purchased the Product in Illinois (the "Illinois Subclass," together with the California Subclass, the "Subclasses").

58.    Excluded from the Class and Subclasses are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.    Also excluded from the Class and Subclasses are persons or entities that purchased the Product for purposes of resale.

60.    Plaintiffs are members of the Class and Subclasses they seek to represent.

61.    Members of the Class and Subclasses are so numerous that joinder of all members is impractical.  Although Plaintiffs do not yet know the exact size of the Class, the Product is sold in retail locations throughout the United States, and well as online, and on information and belief, members of the Class number in the thousands, if not hundreds of thousands.

62.    The Class and Subclasses are ascertainable because their members can be identified by objective criteria – the purchase of Defendants' Product in the United States during the statute of limitations period.  Individual notice can be provided to Class members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

63.    Common questions of law and fact exist as to all members of the Class and the Subclasses and predominate over questions affecting only individual Class and Subclass members.  Common legal and factual questions include, but are not limited to, whether Defendants' labeling and marketing of the Product was misleading and omitted material information.

64.    Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses as all members of the Class and Subclasses are similarly affected by the same common, inherent defect in Defendants' Product.  Plaintiffs have no interests antagonistic to the interests of the other members of the Class and Subclasses.  Plaintiffs and all members of the Class and Subclasses have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

65.    Plaintiffs are adequate representatives of the Class and Subclasses they seek to represent because their interests do not conflict with the interests of the Class and Subclass members, they have retained counsel that is competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.   The interests of the Class and Subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

66.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.   Each individual Class and Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.   Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## COUNT I
### (California's Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*)

67.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

68.    Plaintiffs Manier and Nero bring this Count individually and on behalf of the California Subclass.

69.    Plaintiffs Manier and Nero and California Subclass members are consumers who purchased the Product for personal, family, or household purposes. Accordingly, Plaintiffs and California Subclass members are "consumers" as that

1    term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiffs and California
2    Subclass members are not sophisticated experts with independent knowledge of the
3    formulation and effects of the Product.

4        70.    At all relevant times, the Product constituted a "good" as that term is
5    defined in Cal. Civ. Code § 1761(a).

6        71.    At all relevant times, Defendants were "persons" as that term is defined
7    in Civ. Code § 1761(c).

8        72.    At all relevant times, Plaintiffs' purchases of the Product, and the
9    purchases of the Product by other California Subclass members, constituted
10   "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendants'
11   actions, inactions, representations, omissions, and conduct has violated, and
12   continues to violate the CLRA, because they extend to transactions that intended to
13   result, or which have resulted in, the sale of the Product to consumers.

14       73.    The policies, acts, omissions, and practices described in this Complaint
15   were intended to and did result in the sale of the Product to Plaintiffs and the Class.
16   Defendants' practices, acts, omissions, policies, and course of conduct violated the
17   CLRA §1750 *et seq.* as described above.

18       74.    Defendants represented that the Product had sponsorship, approval,
19   characteristics, uses, and benefits which it did not have in violation of Cal. Civ.
20   Code § 1770(a)(5).

21       75.    Defendants represented that the Product was of a particular standard or
22   quality when Defendants were aware it was of another, in violation of California
23   Civil Code § 1770(a)(7).

24       76.    Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by
25   representing that the Product was a "no-lye," "anti-breakage" and "intense
26   conditioning" "rejuvenating ritual," which delivers "unified results," "respects hair
27   fiber integrity," "reveal[s] visibly fuller, silkier hair," "protects scalp & skin" and

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1   "infuses hydration & conditioning" as more fully set forth above, when, in fact, the

2   Product does not have these qualities or effects; rather, it increases the risk of and

3   results in injuries, including, but not limited to substantial hair loss, breakage, burns,

4   blisters, and other signs of damage and irritation.

5        77.    Defendants advertised the Product with the intent not to sell it as

6   advertised in violation of § 1770(a)(9) of the CLRA.  Defendants did not intend to

7   sell the Product as advertised because Defendants knew that the Product was not

8   safe and effective, would not nourish, rejuvenate and hydrate hair, or leave it fuller

9   and silkier.  Defendants knew use of the Product increases the risk of and frequently

10  results in damage and injuries.

11       78.    Plaintiffs and California Subclass members suffered injuries caused by

12  Defendants' misrepresentations and omissions because: (a) Plaintiffs and California

13  Subclass members would not have purchased the Product if they had known the true

14  facts; (b) Plaintiffs and California Subclass members purchased the Product due to

15  Defendants' misrepresentations and omissions; and (c) the Product did not have the

16  level of quality, effectiveness, or value as promised.

17       79.    Plaintiffs and the California Subclass seek an order enjoining

18  Defendants' unfair or deceptive acts or practices, equitable relief, an award of

19  attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other just and

20  proper relief available under the CLRA.

21       80.    Prior to the filing of this Complaint, a CLRA notice letter was served

22  on Defendants which complies in all respects with California Civil Code § 1782(a).

23  A true and correct copy of Plaintiffs' letter is attached as Exhibit A.  On September

24  13, 2016, Plaintiffs sent Defendants a letter via certified mail, return receipt

25  requested, advising Defendants that they are in violation of the CLRA and must

26  correct, repair, replace, or otherwise rectify the goods alleged to be in violation of

27  § 1770.  In the event that the relief requested has not been provided within thirty

28

(30) days, Plaintiffs will amend this Complaint to include a request for damages pursuant to the CLRA.

81.    Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

## COUNT II
**(California's False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.*)**

82.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

83.    Plaintiffs Manier and Nero bring this Count individually and on behalf of the California Subclass.

84.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

85.    Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements, and material omissions, to promote the sale of the Product, as described above, and including, but not limited to, representing that the Product was a "no-lye," "anti-breakage" and "intense conditioning" "rejuvenating ritual," which delivers "unified results," "respects hair fiber integrity," "reveal[s] visibly fuller, silkier hair," "protects scalp & skin" and "infuses hydration & conditioning" as more fully set forth above, when, in fact, Defendants knew or should have known the Product does not have these qualities or effects; rather, it increases the risk of and results in injuries, including, but not

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

limited to substantial hair loss, breakage, burns, blisters, and other signs of damage and irritation.

86.    Defendants knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

87.    Defendants' actions and omissions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

88.    As a direct and proximate result of these acts and omissions, consumers have been and are being harmed.  Plaintiffs and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiffs and California Subclass members would not have purchased the Product if they had known the true facts; (b) Plaintiffs and California Subclass members purchased the Product due to Defendants' misrepresentations and omissions; and (c) the Product did not have the level of quality, effectiveness, or value as promised.

89.    Plaintiffs bring this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers. Plaintiffs and the California Subclass are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT III

**(California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

90.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

91.    Plaintiffs Manier and Nero bring this Count individually and on behalf of the California Subclass.

92.    The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent," business act or practice and any false or misleading advertising.

93.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...." The UCL also provides for injunctive relief and restitution for UCL violations. By virtue of its above-described wrongful actions, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

94.    "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

95.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

96.    Defendants violated the "unlawful prong" by violating the CLRA and the FAL, as well as by breaching express and implied warranties as described herein.

97.    Defendants' acts and practices constitute "unfair" business acts and practices in that the harm caused by Defendants' wrongful conduct outweighs any utility of such conduct, and that Defendants' conduct: (i) offends public policy; (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or

(iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiffs and the Class.

98.     There were reasonably available alternatives to further Defendants' legitimate business interests, including changing the Product formula, warning consumers and the public about the risks of and adverse effects caused by the Product, and recalling the Product, other than Defendants' wrongful conduct and omissions described herein.

99.     The UCL also prohibits any "fraudulent business act or practice." Defendants' above-described claims, nondisclosures, and misleading statements were false, misleading, and likely to deceive the consuming public in violation of the UCL.

100.    As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and violation of the UCL; Plaintiffs and members of the California Subclass have suffered injury and actual out-of-pocket losses because: (a) Plaintiffs and California Subclass members would not have purchased the Product if they had known the true facts; (b) Plaintiffs and California Subclass members purchased the Product due to Defendants' misrepresentations and omissions; and (c) the Product did not have the level of quality, effectiveness, or value as promised.

101.    Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the California Subclass are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## COUNT IV

**(Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*)**

102.   Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

103.   Plaintiff Riles brings this Count individually and on behalf of the Illinois Subclass.

104.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq.* (the "ICFA") protects consumers and competitors by promoting fair competition in commercial markets for goods and services.

105.   The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

106. Section 2 of the ICFA provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2 (footnote omitted).

---

31

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    107.   The ICFA applies to Defendants' actions and conduct as described

2    herein because it protects consumers in transactions that are intended to result, or

3    which have resulted, in the sale of goods or services.

4    108.   Defendants are persons within the meaning of the ICFA.

5    109.   Plaintiff and other members of the Illinois Subclass are consumers

6    within the meaning of the ICFA.

7    110.   Defendants' Product is merchandise within the meaning of the ICFA

8    and the sale of its Product is considered trade or commerce under the ICFA.

9    111.   Defendants' act of marketing and advertising the Product as a "no-lye,"

10   "anti-breakage" and "intense conditioning" "rejuvenating ritual," which delivers

11   "unified results," "respects hair fiber integrity," "reveal[s] visibly fuller, silkier

12   hair," "protects scalp & skin" and "infuses hydration & conditioning" as more fully

13   set forth above, is a "deceptive" practice under the Act.  Rather than provide

14   consumers such as Plaintiff and the other Subclass members with full information

15   on which to base purchases, Defendants knowingly concealed such facts and to date

16   has yet to issue even a single word of clarification or retraction

17   112.   Defendants' foregoing deceptive acts and practices, including their

18   omissions, were material, in part, because they concerned an essential part of the

19   Product's functionality and safety.  Defendants omitted material facts regarding the

20   dangers and hazards associated with the Product by failing to disclose that the

21   Product can and does cause substantial hair loss, burns, and blisters, when used as

22   intended.

23   113.   Defendants created advertisements and marketing materials with the

24   intent that Plaintiffs and other consumers would rely on the information provided.

25   114.   Defendants' misrepresentations and omissions to Plaintiff and members

26   of the Illinois Subclass constitute unfair and deceptive acts and practices in violation

27   of the ICFA.

28

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

115.  Had Defendants not engaged in the deceptive misrepresentation and omission of material facts as described above, Plaintiffs and Illinois Subclass members would not have purchased the Product or would have paid less for the Product.

116.  Plaintiff and Illinois Subclass members were damaged by Defendants' conduct directed towards consumers.  As a direct and proximate result of Defendants' violation of the ICFA, Plaintiff and Illinois Subclass members have suffered harm in the form of monies paid for Defendants' Product.  Plaintiff, on behalf of herself and the Illinois Subclass, seeks an order (1) requiring Defendants to cease the unfair practices described herein; (2) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendants to restore to Plaintiff and each Illinois Subclass member any money acquired by means of unfair competition.

## COUNT V
### (Breach of Express Warranty)

117.  Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

118.  Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendants.

119.  Plaintiffs and the Class and Subclass members purchased the Product either directly from Defendants or through authorized retailers such as Amazon, Walmart, Walgreens and/or Sally Beauty Supply, among others

120.  Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" and which delivers "unified results," "respects hair fiber integrity," "reveal[s] visibly fuller, silkier hair", "protects scalp & skin"

"infuses hydration & conditioning," and contains a "powerful anti-oxidant rich in vitamins and minerals."

121.    Defendants' affirmations of fact and promises made to Plaintiffs and the Class on the Product labels became part of the basis of the bargain between Defendants on the one hand, and Plaintiffs and the Class members on the other, thereby creating express warranties that the Product would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

122.    Defendants breached this warranty and/or contract obligation by placing the Product into the stream of commerce and selling it to consumers, when it does not contain the properties it was represented to possess.  Rather, Amla Relaxer suffers from latent and/or inherent design and/or manufacturing defects that cause substantial hair loss, burns, and blisters, rendering the Product unfit for its intended use and purpose.  These defects substantially impair the use, value and safety of the Product.

123.    The latent and/or inherent design and/or manufacturing defects at issue herein existed when the Product left Defendants' possession or control and was sold to Plaintiffs and the Class and Subclass members.    The defects were not discoverable by Plaintiffs and the Class and Subclass members at the time of their purchase of the Product.

124.    As the manufacturers, suppliers, and/or sellers of the Product, Defendants had actual knowledge of the breach, and given the nature of the breach, i.e. false representations regarding the Product, Defendants necessarily had knowledge that the representations made were false, deceptive and/or misleading.

125.    Defendants were provided further notice of the Product defects and the breach of warranties via the hundreds of consumer complaints, including complaints from putative Class members, posted on the Internet.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

126.   Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the true facts and the Product did not have the characteristics, quality, or value as promised.

## COUNT VI
### (Breach of Implied Warranty of Merchantability)

127.   Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

128.   Plaintiffs bring this Count individually and on behalf of the members of the Class and Subclasses.

129.   The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  To be "merchantable," goods must, inter alia, "pass without objection in the trade under the contract description," "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," be "adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label."

130.   Defendants formulated, manufactured, tested, marketed, promoted, distributed, and sold the Product as safe for use by the public at large, including Plaintiffs, who purchased the Product.

131.   Defendants knew the use for which the Product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

132.   Plaintiffs reasonably relied on the skill and judgment of the Defendants, and as such their implied warranty, in using the Product.

133.   Contrary to same, the Product was not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous and unfit for the

ordinary purpose for which it was used.  Specifically, the Product causes significant hair loss and skin and scalp irritation, including burns and blisters.

134.   Defendants breached their implied warranties because the Product does not have the quality, quantity, characteristics, or benefits as promised, and because the Product does not conform to the promises made on its labels.

135.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiffs experienced significant hair loss.  They also experienced burns and/or irritation on their scalp as a result of using the Product.

136.   Plaintiffs and Class and Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the true facts and the Product did not have the characteristics, quality, or value as impliedly warranted.

137.   Plaintiffs demand judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## <u>COUNT VII</u>
### (Unjust Enrichment)

138.   Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

139.   Plaintiffs bring this Count individually and on behalf of the members of the Class and Subclass.

140.   Plaintiffs and members of the Class and Subclass conferred benefits on Defendants by purchasing the Product.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

141.   Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs' and Class and Subclass members' purchases of the Product. Retention of that revenue under these circumstances is unjust and inequitable because Defendants misrepresented and omitted material facts concerning the characteristics, qualities, and value of the Product and caused Plaintiffs and Class and Subclass members to purchase the Product, which they would not have done had the true facts been known.

142.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class and Subclass is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT VIII**

**(Fraud)**

143.   Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

144.   Plaintiffs bring this Count individually and on behalf of the members of the Class and Subclasses.

145.   As described herein, Defendants knowingly made material misrepresentations and omissions regarding the Product in their marketing and advertising materials.

146.   Defendants made these material misrepresentations and omissions in order to induce Plaintiffs and putative Class and Subclass members to purchase the Product.

147.   Rather than inform consumers about the dangers associated with using the Product, Defendants represented the Amla Relaxer as a "no-lye," "anti-breakage" and "intense conditioning" "rejuvenating ritual," which delivers "unified results," "respects hair fiber integrity," "reveal[s] visibly fuller, silkier hair,"

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

"protects scalp & skin," "infuses hydration & conditioning," and contains a "powerful anti-oxidant rich in vitamins and minerals."

148.    The Product is not a safe, effective, gentler or "easier relaxing process" as described on Product packaging. Rather, it contains ingredients that alone and/or in combination render it unsafe and unsuitable for consumer use as marketed by Defendants.

149.    The misrepresentations and omissions made by Defendants, upon which Plaintiffs and other Class and Subclass members reasonably and justifiably relied, were intended to induce and did actually induce Plaintiffs and other Class and Subclass members to purchase the Product.

150.    Had Plaintiffs known the truth about the qualities of and dangers associated with the Product, they would not have purchased the Product

151.    Defendants' fraudulent actions and omissions caused damage to Plaintiffs and other Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX
### (Negligence)

152.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

153.    Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendants.

154.    Defendants negligently formulated, manufactured, tested, marketed, promoted, distributed, and sold the Product in this District and throughout the United States.

155.    At all times relevant and material hereto, Defendants had a duty to exercise reasonable care in the design, manufacture, testing, advertising, marketing, labeling, packaging, distribution, promotion and sale of the Product.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

156.    Defendants breached their duty and was negligent in their actions, misrepresentations, and omissions in numerous ways including, but not limited to, the following:

a. Failing to use due care in the formulation, design, and development of the Product to prevent and/or minimize the risk of injury and adverse effect to individuals when the Product was used;

b. Failing to test the Product properly and thoroughly before releasing it on the market;

c. Failing to conduct adequate post-market monitoring and surveillance of the Product and analysis for adverse reports and effects;

d. Designing, manufacturing, marketing, advertising, distributing, and selling the Product to consumers, including Plaintiffs and Class and Subclass members, without adequate warnings of the risks associated with using the Product and without proper and/or adequate instructions to avoid the harm which could foreseeably occur as a result of using the Product;

e. Failing to exercise due care when advertising and promoting the Product;

f. Negligently continuing to manufacture, market, distribute, and sell the Product, after Defendants knew or should have known of the risks of serious injury associated with using the Product;

g. Failing to conduct adequate post-market surveillance and studies to determine the safety of the Product;

h. Failing to label the Product to adequately warn Plaintiff, Class and Subclass members, and the public of the risk of injury and adverse effects associated with the Product.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

157.   Defendants advertised, marketed, sold and distributed the Product despite the fact that the Defendants knew or should have known of the risks associated with using the Product.

158.   Defendants had a duty to warn their customers and the public about the risks of injury and adverse effects and refused to do so placing profit ahead of consumer safety.

159.   Defendants knew or should have known that the Product had unreasonably dangerous risks of which consumers would not be aware. Defendants nevertheless advertised, marketed, sold and distributed the Product.

160.   Despite the fact that Defendants knew or should have known that the Product caused adverse effects including hair loss, burns, and blisters, Defendants continued to manufacture, market, advertise, promote, sell and distribute the Product to consumers, including Plaintiffs and Class and Subclass members.

161.   Defendants recklessly and/or negligently failed to disclose to Plaintiffs and Class and Subclass members the risks and adverse effects associated with the Product, thereby suppressing material facts about the Product, while having a duty to disclose such information, which duty arose from its actions of making, marketing, promoting, distributing and selling the Product as alleged.

162.   Defendants led Plaintiffs and Class members to rely upon the safety of the Product in their use of the Product.

163.   Defendants' false representations were recklessly and/or negligently made in that the Product in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

164.   Defendants knew or should have known that its representations and/or omissions were false. Defendants made such false, negligent and/or reckless representations with the intent or purpose that Plaintiffs and Class and Subclass

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

members would rely upon such representations, leading to the use of the Product as described.

165.  Defendants recklessly and/or negligently misrepresented and/or omitted information with respect to the Product as set forth above.

166.  Defendants omitted, suppressed, and/or concealed material facts concerning the dangers and risk of injuries associated with the use of the Product. Furthermore, Defendants were willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the nature of the risks associated with the Product in order to continue to sell the Product.

167.  At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that the Product was unreasonably dangerous and not what Defendants had represented to Plaintiffs and Class and Subclass members.

168.  Defendants' misrepresentations and/or omissions were undertaken with an intent that Plaintiffs and Class and Subclass members rely upon them.

169.  Plaintiffs relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of the Product to purchase and use the Product.

170.  Plaintiffs did not know that these representations were false and therefore were justified in their reliance.

171.  As a direct and proximate consequence of Defendants' negligent, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs sustained injuries and damages as alleged herein.

172.  Had Plaintiffs been aware of the risk of injury associated with the Product and the relative efficacy of the Product compared with other readily available hair relaxer products, they would not have purchased the Product.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

173.   As a direct and proximate consequence of Defendants' negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs sustained the injuries, damages, and harm as alleged herein.

174.   Defendants' negligence was a substantial factor in causing Plaintiffs' harm.

175.   Plaintiffs and Class and Subclass members are entitled to compensatory damages, and exemplary and punitive damages together with interest, and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

b.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For an order enjoining Defendants from continuing the unlawful practices detailed herein; and

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1     h.     For an order awarding Plaintiffs and the Class and Subclass their

2     reasonable attorneys' fees and expenses and costs of suit.

3                              **<u>DEMAND FOR JURY TRIAL</u>**

4     Plaintiffs hereby demand a trial by jury on all issues so triable.

5     DATED: September 14, 2016     **GERAGOS & GERAGOS APC**

6

7                              By:  _____

8

9                              MARK J. GERAGOS (SBN 108325)
                              BEN J. MEISELAS (SBN 277412)
10                            Historic Engine Co. No. 28
                              644 South Figueroa Street
11                            Los Angeles, CA 90017
                              Telephone:  (213) 625-3900
12                            Facsimile: (213) 232-3255
                              geragos@geragos.com
13

14                            **LEVI & KORSINSKY LLP**
                              LORI G. FELDMAN (*pro hac vice* to be filed)
15                            lfeldman@zlk.com
                              ANDREA CLISURA (*pro hac vice* to be filed)
16                            aclisura@zlk.com
                              COURTNEY E. MACCARONE (*pro hac vice* to be
17                            filed)
                              cmaccarone@zlk.com
18                            30 Broad Street, 24th Floor
                              New York, New York 10004
19                            Telephone:  (212) 363-7500
                              Facsimile:   (866) 367-6510
20
                              *Counsel for Plaintiffs*
21

22

23

24

25

26

27

28
                                        43
     CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF